73700. RICHMOND COUNTY HOSPITAL AUTHORITY OPERATING UNIVERSITY HOSPITAL v. DICKERSON et al.
(356 SE2d 548)

BEASLEY, Judge.

We granted an application for review from the trial court's order denying Richmond Hospital's motion for summary judgment. The original complaint was brought by the daughters and husband of Julia Loree Dickerson, deceased, seeking recovery of damages for her wrongful death. The complaint alleged that decedent suffered an aneurism and was taken to the emergency room at Richmond Hospital; that she remained there until her death about eight hours after her arrival; that during the time she did not receive competent medical attention and treatment; that Richmond Hospital's employees were grossly negligent and failed to exercise standard professional care while decedent was a patient in the hospital; that Mrs. Dickerson's death was a result of incompetent treatment and care.

1. Because this issue could be dispositive of the entire case we first consider enumeration of error two.

(a) In its application for interlocutory review and on appeal to this Court, Richmond Hospital has stressed that even if its employees were negligent, such negligence was not the cause of the death because the deceased and her family declined treatment by the hospital staff. The emergency room physician who attended Mrs. Dickerson related by affidavit that after Mrs. Dickerson's condition was diagnosed by him she was advised that surgery was necessary. Despite this, she and her family refused treatment and sought the services of

another physician. This continued over the course of the afternoon and by the time treatment was begun it was too late.

Were this undisputed there would be an issue of law as to proximate cause. However, in actuality there is a factual question since the family of Mrs. Dickerson, by deposition, testified to a quite different situation. According to their account they were not informed as to the necessity of surgery and did not request a specific doctor but were told one would arrive imminently; that no one arrived and no one closely monitored Mrs. Dickerson's condition while they waited and waited. The contention is that monitoring vital signs and informing the physician was the responsibility of the hospital's nurses. Because there was a dispute as to what transpired, the trial court properly left that matter for the jury's determination.

(b) Based on expert medical testimony that Mrs. Dickerson's chances of survival, even with surgery, were less than fifty percent, Richmond Hospital cites foreign authority to the effect that in such circumstances a causal connection between any negligence and Mrs. Dickerson's death was not established. The cases do not sustain this extreme position.

The sole Georgia case relied upon, *Parrott v. Chatham County Hosp. Auth.*, 145 Ga. App. 113, 115 (243 SE2d 269) (1978), stands for the general proposition that negligence alone is not sufficient to impose liability, for "the complaining patient must prove that the injury complained of proximately resulted from such want of care or skill. A bare possibility of such result is not sufficient." In addition to this well recognized principle this Court added language found in *Watson v. United States*, 346 F2d 52 (5th Cir. 1965), that there could be no recovery for medical negligence involving the loss of the patient's leg where there was "no showing to any reasonable degree of medical certainty that the loss . . . could have been avoided."

Proximate cause is not eliminated by merely establishing by expert opinion that the patient had less than a fifty percent chance of survival had the negligence not occurred. If imminent death was inevitable regardless of treatment, lack of treatment would of course not be the proximate cause of death. But the attending physician here, the hospital's witness, steadfastly maintained that surgery was indicated right from the outset, in order to sustain her life. It is obvious from his affidavit that in his opinion death was not inevitable, if surgery were performed without delay. The real question here is, why was it not undertaken? Was it because the patient and/or family refused to consent to treatment other than by or at the direction of the workers' compensation physician, or because they were not advised of the necessity for immediate surgery and the unavailability of the workers' compensation physician, or for some other reason? Did the hospital's nurses fail to adequately monitor and report Mrs. Dicker-

son's condition so that no emergency action was taken sooner than nearly 6:00 p.m., when death became irreversible? The record does not establish that the actions or inactions of the hospital staff were not a proximate or contributing cause of Mrs. Dickerson's death. Thus the movant hospital did not on this record, carry its burden of proof on summary judgment. *Ray v. Ga. Farm &c. Ins. Co.*, 176 Ga. App. 776, 780 (337 SE2d 779) (1985); *Murphy v. Clayton County Hosp.*, 175 Ga. App. 152 (2) (333 SE2d 15) (1985).

2. Richmond Hospital asserts that plaintiffs failed to submit proof by a qualified expert that it failed to exercise the appropriate standard of care. Plaintiffs did submit an affidavit by a physician who testified that the hospital's employees and nurses were negligent in failing to properly monitor Mrs. Dickerson during the time she was in the hospital. He stated they failed to meet the requisites of ordinary care. Based on the fact he failed to refer to the standards for the "locality" in question, Richmond Hospital contends his affidavit is without probative value.

Richmond Hospital misreads the applicable cases. The "locality" rule applies where the adequacy of the services or facilities of a small hospital is questioned. See *Wade v. John D. Archbold Mem. Hosp.*, 252 Ga. 118 (311 SE2d 836) (1984), where the professional judgment of a physical therapist was questioned, the court held: "the standard of care which should be applied to a hospital's physical therapists is that ordinarily employed by the profession generally." Id. p. 119. The rationale for the distinction was simply that while a hospital's facilities and services might be limited by its location and resources, the judgment of its therapist was not so limited. Logically this concept applies also to a nurse and so we held in *Macon-Bibb County Hosp. Auth. v. Ross*, 176 Ga. App. 221 (335 SE2d 633) (1985), emphasizing that the "locality" rule is misplaced where the question concerns the professional judgment of the hospital staff.

The standard of care for a hospital staff generally was set forth in the affidavit. This was a sufficient basis to create an issue for the jury.

3. Richmond Hospital argues that the emergency room was in the charge of physicians who were independent contractors and thus, it was not responsible for any negligence on their part.

More precisely the question is not as to the negligence of the physicians but as to the hospital staff, particularly the nurses. The agreement, which set out that the physicians were acting in the role of independent contractors in providing emergency care, stated that the hospital would provide, at its sole cost and expense, "services of nurses and other non-physician assistants, as may be needed for the effective operation of the Emergency Department." Their status insofar as who would control the nurses or non-physician assistants is not mentioned in the agreement but the implication is that the hospital

did not relinquish control. Compare *Swindell v. St. Joseph's Hosp.*, 161 Ga. App. 290, 291 (1) (291 SE2d 1) (1982) which explains that in the operating room where the surgeon exercises immediate control over the hospital's employees he becomes their master and their negligence is imputable to him.

In other situations, a hospital may be liable for injuries negligently inflicted upon its patients by nurses and other employees. *Newton County Hosp. v. Nickolson*, 132 Ga. App. 164, 166 (1) (207 SE2d 659) (1974). See *Porter v. Patterson*, 107 Ga. App. 64, 70 (129 SE2d 70) (1962): "[A] hospital has a responsibility for the exercise of due care by a nurse (as well as by other hospital employees) while she is performing acts of a character which, though constituting a part of the patient's treatment as prescribed by the attending physician, do not require either the application or the understanding of the specialized technique possessed by a skilled physician or surgeon."

The failure to properly monitor Mrs. Dickerson could be found to fit within the bounds of the above cited cases. Moreover, if we accept the scenario posed by witnesses for plaintiffs, any emergency room treatment had been either suspended or terminated and the patient was being kept in a holding pattern by the hospital pending the arrival of another physician. Under those circumstances a jury issue was presented regarding whether Mrs. Dickerson's care was the hospital's responsibility. Thus, the hospital failed to establish as a matter of law that it owed no duty to Mrs. Dickerson and as we have already noted, it likewise failed to show that it was free from negligence.

The trial court properly denied Richmond Hospital's motion for summary judgment.

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED APRIL 10, 1987.

*Patricia W. Booker, Ted H. Clarkson, Raymond G. Chadwick, Jr.*, for appellant.

*Victor C. Hawk*, for appellees.